UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CASEY KEY RESORT, LLC,

    Plaintiff,

v.                                Case No. 8:21-cv-1446-JLB-JSS

CK RESORTS JV, LLC, and SHAWN
KALETA,

    Defendants.
_____/

# ORDER

Plaintiff Casey Key Resort, LLC ("Casey") operates a resort on Casey Key Road in Nokomis, Florida called "Casey Key Resort." Defendants CK Resorts JV, LLC and its managing member, Shawn Kaleta, also operate hotel properties: "Casey Key Resorts – Mainland," located in Osprey, Florida, and "Casey Key Resorts – Beachfront," which is less than half a mile from Casey Key Resort. Casey brings claims under the Lanham Act and Florida common law against Defendants for alleged service mark infringement and unfair competition. (Doc. 1.) Defendants move to dismiss the claims, arguing that Casey does not sufficiently allege its service mark rights in the marks at issue, its use of the marks prior to Defendants' use, or facts that would allow the claims against Mr. Kaleta to proceed. (Doc. 5.) After careful consideration, Defendants' motion to dismiss is **GRANTED**, and Casey's claims are **DISMISSED without prejudice**.

## BACKGROUND[1]

Casey is a business "engaged in hotel resort services" in Florida. (Doc. 1 at 2, ¶ 7.) In October 2015, Casey "began the process of purchasing an existing resort motel located in Nokomis, Florida along with some adjacent land and existing tri-plex which [Casey] would rebrand and operate as Casey Key Resort." (Id.) In March 2016, Casey purchased the Gulf Shores Beach Resort Motel, located at 317, 320, and 328 Casey Key Road, Nokomis, Florida (the "'317 Resort"). (Id. ¶ 8.) On May 5, 2016, Casey purchased the website domain www.caseykeyresort.com. (Id. at 3, ¶ 10.)

Sometime in 2016, after completing the purchase of the '317 Resort, Casey "began the process of rebranding the resort beginning with the interiors of the resort and guest rooms." (Id. ¶ 12.) This "initial rebranding . . . included interior signage, key chains, stationary pads and pens with the CASEY KEY RESORT mark thereon located in the resort and guest rooms." (Id. ¶ 13.) On October 29, 2020, Casey "purchased the last of the adjacent property containing 3 additional rental units to complete the collection of properties that would be combined to form the CASEY KEY RESORT." (Id. ¶ 14.) On April 27, 2021, "outdoor signage with the 'CASEY KEY RESORT' mark was installed at the '317 Resort." (Id. ¶ 15.)

Also in April 2021, Defendants purchased two hotel properties, one in Osprey, Florida, and the other in Nokomis, less than half a mile from the '317

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citation omitted).

Resort.  (Id. at 4, ¶¶ 17, 20.)  On May 12, 2021, Defendants replaced the Osprey property's signage with "CASEY KEY RESORTS – MAINLAND" and the Nokomis property's signage with "CASEY KEY RESORTS – BEACHFRONT."  (Id. ¶ 18.)  "Instances of actual confusion immediately ensued."  (Id. ¶ 19.)  Defendants also "purchased and are using the domain www.caseykeyresorts.com."  (Id. ¶ 20.)

Casey alleges that it "is the owner of all right, title and interest in the servicemark CASEY KEY RESORT and CASEY KEY RESORT HOTEL . . . for use in connection with its hotel services" and the owner of pending federal service mark applications for the same.  (Id. at 5, ¶¶ 22–24.)  Those applications were filed on April 28, 2021 and May 3, 2021, respectively.  (Docs. 5-1, 5-2.)[2]

Casey alleges that Defendants "are now directly competing with Plaintiff using the mark CASEY KEY RESORTS" and are "seeking to utilize Plaintiff's Marks in order to exploit the goodwill of Plaintiff."  (Doc. 1 at 4–5, ¶¶ 20, 25.)  Casey brings four claims against both Defendants as follows: (1) service mark infringement under 15 U.S.C. § 1125 (Count I); (2) unfair competition under 15 U.S.C. § 1125 (Count II); (3) unfair competition under Florida common law (Count

---

[2] Although Casey did not include the service mark applications in its Complaint, Defendants ask the Court to take judicial notice of the applications.  (Doc. 5 at 5 n.1.)  Casey does not object or challenge the applications and, in all events, the motion is due to be granted without consideration of the applications.

III); and service mark infringement under "common law" (Count IV). (Id. at 9–17.)³ Casey seeks damages and injunctive relief. (Id.)

Defendants move to dismiss the claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Casey does not sufficiently allege its service mark rights in the marks at issue, its use of the marks prior to Defendants' use, or facts that would allow the claims against Mr. Kaleta to proceed. (Doc. 5.) Casey has responded in opposition and requests leave to file an amended complaint if the Court grants the motion. (Doc. 10 at 1.)

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citation omitted). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

³ Unlike Count III, Count IV does not specify whether its claim is founded in Florida common law or another source of law. (Doc. 1 at 15; Doc. 10 at 2.) This omission should be clarified if Casey files an amended complaint.

4

## DISCUSSION

Casey's service mark infringement and unfair competition claims are due to be dismissed without prejudice. It is undisputed that "[t]he legal standard for unfair competition . . . and trademark infringement under both the Lanham Act and common law" is "essentially the same." Turner Greenberg Assocs. v. C & C Imp., Inc., 320 F. Supp. 2d 1317, 1330 (S.D. Fla. 2004) (citation omitted); see also Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 F. App'x 252, 256 (11th Cir. 2006) ("[T]he analysis of the Florida statutory and common law claims of trademark infringement and unfair competition is the same as under the federal trademark infringement claim." (citation omitted)); Domond v. PeopleNetwork APS, 748 F. App'x 261, 262–64 (11th Cir. 2018) (collecting cases); (Doc. 5 at 7; Doc. 10 at 2).[4]

To establish a prima facie case for trademark infringement and unfair competition, a plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." Suntree Techs., Inc. v. Ecosense Int'l, Inc., 693 F.3d 1338, 1346 (11th Cir. 2012) (quoting Tana v. Dantanna's, 611 F.3d 767, 773 (11th Cir. 2010)); see also Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188 (11th Cir. 2001). As Defendants correctly contend, there are several deficiencies in the Complaint as

---

[4] As the Eleventh Circuit has also explained, "[t]he analysis is the same for service mark and trademark infringement." Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010) (citation omitted).

5

to whether Casey had service mark rights in the marks at issue. The Court, however, will grant leave for Casey to replead.[5]

I.     **WHETHER CASEY HAS SUFFICIENTLY ALLEGED ITS SERVICE MARK RIGHTS**

Rights in a mark are "determined by the date of the mark's first use in commerce," and "[t]he party who first uses a mark in commerce is said to have priority over other users." Domond, 748 F. App'x at 262–63. The Lanham Act defines "use in commerce" as

> the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. . . . [A] mark shall be deemed to be in use in commerce . . . on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce . . . .

15 U.S.C. § 1127; see also Planetary Motion, Inc., 261 F.3d at 1194.

To establish actual use in commerce, a plaintiff must show "first, adoption, and, second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark, is competent to establish ownership, even without evidence of actual sales." Direct Niche, LLC v. Via Varejo S/A, 898 F.3d 1144, 1150 (11th Cir. 2018) (applying analysis to service mark) (citations omitted). Additionally, the mark must be sufficiently distinctive to warrant protection. See Tana, 611 F.3d at 773. Accordingly, a party seeking to establish its trademark rights must show that: (1)

---

[5] As Defendants observe, because Casey has not established the first element of its claims, it is unnecessary to consider consumer confusion. See Bavaro Palace, 203 F. App'x at 256 (noting that if there is "no protectable interest in the asserted mark, the consumer confusion analysis is immaterial" (citation omitted)); (Doc. 5 at 20).

6

the mark is inherently distinctive or acquired secondary meaning prior to Defendants' use of the mark; and (2) the party used the mark in commerce prior to the defendant.  See Domond, 748 F. App'x at 262–64 (collecting cases).

Casey fails to sufficiently allege that the marks are inherently distinctive or acquired secondary meaning and fails to allege its prior use of the marks.

### A. Inherently distinctive or acquired second meaning

Casey does not allege that its Casey Key Resort and Casey Key Resort Hotel marks are inherently distinctive.  To be distinctive, the mark must "serve the purpose of identifying the source of the goods or services."  Knights Armament Co. v. Optical Sys. Tech., Inc., 654 F.3d 1179, 1188 (11th Cir. 2011) (citation omitted).  The Eleventh Circuit recognizes four categories of distinctiveness: "(1) fanciful or arbitrary; (2) suggestive; (3) descriptive; and (4) generic."  Id. (citations omitted).  "A descriptive mark identifies a characteristic or quality of the product," is not inherently distinctive, and receives protection "only if it acquires secondary meaning."  Id. (internal quotation marks and citations omitted).

As Defendants correctly contend, the allegations indicate that the marks at issue are, at best, descriptive, and Casey has not adequately alleged that they acquired a secondary meaning prior to Defendants' use.  Indeed, both marks include "Casey Key," which is the name of the road on which the '317 Resort is located.  (Doc. 1 at 2–3, ¶¶ 8, 14.)   They are, in other words, geographically descriptive marks.  See Gulf Coast Com. Corp. v. Gordon River Hotel Assocs., No. 2:05-cv-564-FtM-33SPC, 2006 WL 1382072, at *6 (M.D. Fla. May 18, 2006) (noting that a mark is likely geographically descriptive if it "is the name of the place or

7

region from which the goods actually come," which can include "any geographic location on earth, such as continents, nations, regions, states, cities, streets and addresses, areas of cities, rivers, and any other location referred to by a recognized name" (citations and alterations omitted)). "A geographically descriptive mark is generally considered not inherently distinctive, but weak, and given a narrow range of protection." HBP, Inc. v. Am. Marine Holdings, Inc., 290 F. Supp. 2d 1320, 1328 (M.D. Fla. 2003).

And although Casey's marks also include the words "Resort" and "Resort Hotel," a mark is descriptive and not inherently distinctive when it combines a geographically descriptive term with another descriptive term. See, e.g., Gulf Coast, 2006 WL 1382072, at *6 ("Inn on Fifth"); Bavaro Palace, S.A., 203 F. App'x at 255–56 (hotel on Bavaro Beach named "Bavaro Palace"). Resort and Resort Hotel both describe the service offered—namely, hotel or resort services. (Doc. 1 at 2, ¶ 7.) Casey alleges "no facts related to the use of the mark that, if true, would establish that the mark is suggestive," or anything other than descriptive. See Tropic Ocean Airways, Inc. v. Floyd, 598 F. App'x 608, 611–12 (11th Cir. 2014) (allowing distinctiveness and secondary meaning analysis at motion to dismiss stage).

As to whether the marks acquired a secondary meaning prior to Defendants' use, Casey must show that "the primary significance of the term in the minds of the consuming public is not the product but the producer." Knights Armament, 654 F.3d at 1188 (citation and brackets omitted). To determine whether a mark has acquired a secondary meaning, courts examine "the length and nature of the name's

8

use, the nature and extent of advertising and promotion of the name, the efforts of the proprietor to promote a conscious connection between the name and the business, and the degree of actual recognition by the public that the name designates the proprietor's product or service." Id. (citation omitted). Courts have found that, as to specifically geographic terms, the plaintiff must show that "a sufficient segment of a relevant market group comes to associate the phrase not just with the geographic place it originally signified, but also with a single source of goods or services available in the marketplace.'" Gulf Coast, 2006 WL 1382072, at *8 (quoting HBP, Inc., 290 F. Supp. 2d at 1328). Conclusory allegations of a secondary meaning are insufficient. See Tropic Ocean Airways, 598 F. App'x at 612.

      Casey does not allege that the marks have acquired secondary meaning, nor does it provide sufficient allegations to support such a finding. Although the Complaint mentions "the process of rebranding" the '317 Resort in 2016 and the use of "interior signage, key chains, stationary pads and pens," the Complaint does not specify when and to what extent the CASEY KEY RESORT mark was used in the rebranding. (Doc. 1 at 3, ¶¶ 12–13.) The outdoor signage with "CASEY KEY RESORT" was not used until April 27, 2021. (Id. ¶ 15.) There is no factual allegation as to other advertising, promotion, or efforts to promote a conscious connection in the public's mind. And although Casey purchased the domain www.caseykeyresort.com in May 2016, it does not allege that it has used the domain in connection with the '317 Resort, much less during what timeframe. (Doc.

1 ¶ 10.) There are, in short, several deficiencies in the Complaint, and dismissal with leave to amend is warranted. See Tropic Ocean Airways, 598 F. App'x at 612.[6]

### B. Use of the service marks in commerce prior to Defendants' use

As noted, Casey must adequately allege "use of the mark before Defendants' use began." Easygroup Ltd. v. Skyscanner, Inc., No. 20-20062-CIV, 2021 U.S. Dist. LEXIS 56919, at *19 (S.D. Fla. Mar. 24, 2021) (emphasis in original). And Casey cannot rely on "its current use and trademark ownership . . . to illustrate prior use," or rely on a filing for federal registration to establish priority. Id. (citation omitted). The mere registration or ownership of a domain name with the mark is also insufficient. See Sesderma, S.L. v. Mediderm Lab'ys, LLC, No. 17-24635-CIV, 2018 U.S. Dist. LEXIS 197799, at *9 n.1 (S.D. Fla. Nov. 19, 2018).

As noted, the Complaint's allegations as to Casey's use of the service marks are sparse. Casey alleges use of the CASEY KEY RESORT mark in connection with hotel services since 2016. (Doc. 1 at 3, 15, ¶¶ 12, 60.) There are, however, no details as to the "rebranding" process of the '317 Resort, and the outdoor signage with "CASEY KEY RESORT" was installed only two weeks prior to Defendants' signage. Casey's conclusory allegations of use in commerce are insufficient. (See, e.g., Doc. 1 at 3, 15 ¶¶ 12, 60.) In summary, Casey's claims are due to be dismissed without prejudice, and Casey will be allowed to replead.

---

[6] Casey contends that continuous and substantially exclusive use of a mark in connection with a good or service for five years constitutes a prima facie showing of "secondary meaning." (Doc. 10 at 4.) The cited provision, however, refers to distinctiveness as it relates to the registration process, not secondary meaning. See 15 U.S.C. § 1052(f). In all events, for the reasons discussed, the allegations are insufficient.

## II.  CLAIMS AGAINST MR. KALETA

The Complaint is also deficient as to Casey's claims against Mr. Kaleta. Specifically, as Defendants correctly contend, Casey does not plead sufficient allegations to pierce the corporate veil. (Doc. 5 at 20–22.) And the Complaint does not adequately allege that Mr. Kaleta actively and knowingly caused any service mark infringement or unfair competition.

Under Florida law, "a corporation is a separate legal entity, distinct from the persons comprising it." Oginsky v. Paragon Props. of Costa Rica LLC, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011) (citation and brackets omitted). Accordingly, "[t]hose who utilize Florida law to do business in the corporate form have every right to rely on the rules of law that protect them against personal liability unless it can be shown that the corporation is formed or used for some illegal, fraudulent, or other unjust purpose, which justifies piercing the corporate veil." S-Fer Int'l, Inc. v. Stonesheets, LLC, No. 14-24662-CIV, 2016 U.S. Dist. LEXIS 190241, at *8 (S.D. Fla. July 22, 2016) (citation omitted). The corporate veil can be pierced if the plaintiff shows that "the corporation is a mere instrumentality or alter ego of the defendant, and that the defendant engaged in improper conduct in the formation or use of the corporation." Oginsky, 784. F. Supp. 2d at 1373 (citation omitted). The "mere ownership of a corporation by a few shareholders, or even one shareholder, is an insufficient reason to pierce the corporate veil.'" Id. (citation omitted); see also Burris v. Green, No. 3:12-cv-521-MCR-CJK, 2016 U.S. Dist. LEXIS 136249, at *21–22 (N.D. Fla. Aug. 26, 2016) (collecting cases). However, as the Eleventh Circuit has instructed, "[i]f an individual actively and knowingly caused the trademark

11

infringement, he is personally responsible," and "a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil." Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir. 1994) (citations omitted).

Here, Casey's claims arise from the hotel business of Defendant CK Resorts JV, LLC, a limited liability company of which Mr. Kaleta is the "managing member." (Doc. 1 ¶¶ 4, 5, 17–20, 44–62); see In re Paul C. Larsen, P.A., 626 B.R. 446, 452 (M.D. Fla. 2021) ("While the doctrine of corporate veil piercing obviously arose in the context of corporations, Florida courts also apply it to professional associations and other corporate-like entities."). There are no allegations, however, establishing whether the company is a "mere instrumentality or alter ego" of Mr. Kaelta, that he engaged in improper conduct in its formation or use, or that he actively and knowingly caused the alleged service mark infringement or unfair competition.

As noted, it is insufficient that Mr. Kaleta is the company's managing member. Casey argues in its response that "a managing member of a limited liability company is both an owner of the company and the person who keeps the business running on a day-to-day basis," and that "[a] typical managing member is in charge of total management of the company and has decision making responsibilities within the company." (Doc. 10 at 7.) These assertions, however, are nowhere to be found in the Complaint. And although Casey observes that it alleged

12

that Defendants jointly committed the acts giving rise to the claims, a complaint must "specify[] which of the defendants are responsible for which acts or omissions."  Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1323 (11th Cir. 2015).  Indeed, Mr. Kaleta is not specifically referenced apart from his position as "managing member" of CK Resorts JV, LLC, and the Court is therefore unable to determine whether the Complaint sufficiently alleges that he directed, controlled, ratified, participated in, or was the moving force behind the infringing activity.  In short, Casey's claims against both Defendants are due to be dismissed without prejudice, and Casey will be allowed to replead.

## CONCLUSION

Defendants' motion to dismiss (Doc. 5) is **GRANTED**.  Counts I, II, III, and IV of the Complaint (Doc. 1) are **DISMISSED without prejudice**.  **No later than November 4, 2021**, Plaintiff may file an amended complaint.  Failure to timely file an amended complaint will result in the dismissal of this action without further notice.  If Plaintiff timely files an amended complaint, Defendants may file a responsive pleading or motion **no later than fourteen days from that date**.

**ORDERED** in Tampa, Florida, on October 20, 2021.

_____
JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

13